IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:15CR358-EAS |
| | ) | CASE NO.: 3:16CR222-EAS |
| Plaintiff, | ) | |
| | ) | CHIEF JUDGE EDMUND A. SARGUS, |
| v. | ) | JR. |
| | ) | |
| YAHYA FAROOQ MOHAMMAD, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT YAHYA FAROOQ MOHAMMAD'S MOTION TO SUPPRESS STATEMENTS MADE IN VIOLATION OF THE SIXTH AMENDMENT RIGHT TO COUNSEL  AND THE PRINCIPLES ENUNCIATED IN MASSIAH V. UNITED STATES**

Now comes the United States of America, by and through its attorneys, David A. Sierleja, Acting United States Attorney, Northern District of Ohio, and Daniel L. Lemisch, Acting United States Attorney, Eastern District of Michigan, and Matthew W. Shepherd and Michael Freeman, Assistant United States Attorneys, and Gregory R. Gonzalez, Trial Attorney, U.S. Department of Justice, Washington, D.C., and hereby submits this response to Defendant Yahya Farooq Mohammad's Motion to Suppress Statements Made in Violation of the Sixth Amendment Right to Counsel and the Principles Enunciated in Massiah v. United States.  As further explained below, the government does not oppose the motion because it does not intend to introduce at trial

statements made by the Defendant to the jailhouse informant after March 30, 2016, regarding the charges against Defendant in case number 2015CR358, with the exception that it reserves the right to use any such statements to impeach inconsistent testimony of the Defendant.

## PROCEDURAL HISTORY AND RELEVANT FACTS

On September 30, 2015, Yahya Farooq Mohammad (hereinafter "Defendant"), and co-defendants Ibrahim Zubair Mohammad ("Ibrahim"), Asif Ahmed Salim, and Sultane Roome Salim, were charged by way of indictment with Conspiracy to Provide and Conceal Material Support to Terrorists, in violation of 18 U.S.C. § 2339A (Count 1); Providing Material Support to Terrorists, in violation of 18 U.S.C. § 2339A (Count 2); and Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 1512(k) (Count 4).  Additionally, the Defendant and his brother Ibrahim were charged with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349 (Count 3).  The indictment alleges that defendants conspired to provide and did provide funds to Anwar Al-Awlaki ("Awlaki") for use in supporting terrorist attacks; that the Defendant and Ibrahim conspired to fraudulently obtain funds from financial institutions in the United States in order to support the conspiracy and provide funds to Awlaki; and that all four of the defendants conspired to obstruct the government's investigation into the illicit fundraising (Case No. 3:15-cr-358, Doc. 1).  The Defendant was arrested on the indictment in November 2015 when he arrived in the United States after being deported from the United Arab Emirates.

In the spring of 2016, while awaiting trial in case number 3:15CR358, the Defendant was detained at the Lucas County Jail in Toledo, Ohio.  There the Defendant met another inmate who eventually became a cooperating witness for the government. The cooperating witness (hereinafter "CW") reported to the government that Defendant had discussed hiring a hitman to murder the presiding judge in his case, Judge Jack Zouhary.  The CW was first interviewed about

this allegation on March 28, 2016.  On March 30, 2016, the CW was interviewed in greater detail by the FBI.  This interview included the CW's description of incriminating statements made by the Defendant about the conduct charged in case number 2015CR358.  At that meeting, the CW agreed to wear a recording device and record conversations with the Defendant regarding the plot to murder Judge Zouhary.  The CW ultimately was outfitted with a recording device three times:  on April 8, 2016; on April 26, 2016, and on May 11, 2016.  On April 8, 2016, and April 26, 2016, the CW was admonished by the FBI in writing not to discuss with the Defendant the charges pending against him in case number 3:15CR358.  These recordings captured conversations between the CW and the Defendant about the plan to murder Judge Zouhary, including discussions about why the Defendant wanted to murder Judge Zouhary, whether the body should be found or not, how to communicate with and make payments to the CW's associate who would commit the actual murder, and other individuals to target after the murder of Judge Zouhary was carried out.

    As a result of the investigation into the Defendant's plot to kill Judge Zouhary, on July 6, 2016, the Defendant was charged in a separate indictment with Attempted Murder of a Federal Official, in violation of 18 U.S.C. § 1114; Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373, and Murder-for-Hire, in violation of 18 U.S.C. § 1958.  The new charges related to the Defendant's attempt to hire a "hit man" to murder United States District Judge Jack Zouhary, who was then presiding over this case (Case No. 3:16CR222, Doc 1).

    On February 16, 2017, at the request of the Defendant, the Court ordered that both of the above-described cases be joined and tried together on June 26, 2017, separately from his co-defendants (Case No. 3:15-cr-358, Doc. 210).  On March 15, 2017, the Court ordered that the trial be moved to July 10, 2017 (Case No. 3:15-cr-358, Doc. 216).  On April 26, 2017, the

Defendant filed a motion to suppress any incriminating statements made by the Defendant regarding the charges against him in case number 3:15CR358 to CW after March 30, 2016, claiming any such statements were made in violation of the Defendant's Sixth Amendment right to counsel. (Case No. 3:15-cr-358, Doc. 224).

## ARGUMENT

The Sixth Amendment right to counsel attaches after the initiation of formal charges. Texas v. Cobb, 532 U.S. 162, 172 (2001) (noting that "it is clear that the Sixth Amendment right to counsel attaches only to charged offenses").  Efforts to use confidential informants to question defendants about pending charges in the absence of defense counsel run afoul of the Sixth Amendment.  In Massiah v. United States, 377 U.S. 201 (1964), the Supreme Court held that a defendant's Sixth Amendment right to counsel was violated when "there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel."  Id., at 206.  The principle of Massiah also applies to situations where informants working on behalf of law enforcement obtain incriminating statements from defendants who have already been charged and whose Sixth Amendment right to counsel has attached when law enforcement creates " a situation likely to induce [a defendant] to make incriminating statements without the assistance of counsel." United States v. Henry, 447 U.S. 264, 275 (1980).  As the Defendant correctly points out, a violation of the Massiah principle and a defendant's Sixth Amendment right to counsel can occur even if the government admonishes an informant not to discuss already pending charges with the defendant.  See Ayers v. Hudson, 623 F.3d 301, 311 (6th Cir. 2010).

However, the Sixth Amendment right to counsel is offense specific. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991).  Agents of the government, including informants, may

4

question defendants about other, uncharged offenses without violating the Sixth Amendment. Situations where informants are placed in cells with defendants pending formal charges do not violate the Sixth Amendment where the informant seeks to elicit statements for offenses different from the offenses already charged.  See United States v. Clark, 988 F.2d 1459, 1467 (6th Cir. 1993) ("Where, as here, an undercover government agent is placed in a cell to elicit defendant's statements regarding a crime unrelated to the one for which he is incarcerated, the statements are admissible and do not violate defendant's Sixth Amendment right to counsel."); United States v. Ford, 176 F.3d 376, 380 (6th Cir. 1999) ("[T]he fact that law enforcement officials arranged for an informant to converse with an indicted defendant about offenses other than those for which the defendant had been indicted is not unlawful.").

In this case, after the CW became an agent of the government, the CW was not permitted to elicit any incriminating statements from the Defendant regarding the charges pending in case number 3:15CR358 because the Defendant's Sixth Amendment right to counsel had attached as to those offenses.  However, the CW was permitted to elicit statements about the plot to kill Judge Zouhary, or other uncharged conduct such as targeting others after Judge Zouhary, because the Defendant had not been charged with those offenses, meaning no Sixth Amendment right had yet attached as to those offenses. As a result, the government may seek to introduce at trial all incriminating statements made by the Defendant to the CW regarding the offenses charged in case number 3:16CR222, or other conduct not charged in case number 3:15CR358.

The Defendant seeks to suppress any incriminating statements from the Defendant to the CW regarding the charges in case number 3:15CR358 made after March 30, 2016, the date of the interview with the FBI in which the CW agreed to wear a recording device.  Arguably, after that date, the CW became an "agent" of the government in any dealings with the Defendant, and

5

would have been prohibited from questioning the Defendant about his pending charges according to Massiah and its progeny.  The government does not intend to introduce at trial any incriminating statements made by the Defendant to CW after March 30, 2016, regarding the charges pending in case number 3:15CR358, except that the government reserves the right to use any such statements to impeach the testimony of the Defendant should he testify inconsistently with such statements at trial.  See Kansas v. Ventris, 556 U.S. 586, 593-94 (2009) ("We hold that the informant's testimony, concededly elicited in violation of the Sixth Amendment, was admissible to challenge [defendant's] inconsistent testimony at trial.").

## CONCLUSION

For the foregoing reasons, the government does not oppose the motion to suppress any incriminating statements made by the Defendant to the CW after March 30, 2016, regarding the charges pending in case number 3:15CR358, with the exception that the government reserves the right to introduce any such statements to impeach inconsistent trial testimony of the Defendant.

Respectfully submitted,

DAVID A. SIERLEJA
Acting United States Attorney

DANIEL L. LEMISCH
Acting United States Attorney

By:    /s/ Matthew W. Shepherd
Matthew W. Shepherd (OH: 0074056)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3859
(216) 522-2403 (facsimile)
Matthew.Shepherd@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 26th day of May 2017 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

        /s/ Matthew W. Shepherd
        Matthew W. Shepherd
        Assistant U.S. Attorney