UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YAHYA FAROOQ MOHAMMAD, et al.,

    Defendants.

Case No. 3:15-cr-358
CHIEF JUDGE EDMUND A. SARGUS, JR.

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

YAHYA FAROOQ MOHAMMAD,

    Defendant.

Case No. 3:16-cr-222
CHIEF JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This matter is before the Court on Defendant Yahya Farooq Mohammad's ("Farooq") Motion for Defense Witness Immunity or, in the Alternative, for a Missing Witness Instruction (the "Motion") ['15 ECF No. 225; '16 ECF No. 41]. For the following reasons, Farooq's Motion is **DENIED**.

### I.

Farooq and his co-Defendants, Ibrahim Zubair Mohammad, Sultane Roome Salim, and Asif Ahmed Salim, were indicted on September 30, 2015, and charged with (Count 1) conspiracy to provide and conceal material support to terrorists, in violation of 18 U.S.C. § 2339A; (Count 2) providing material support to terrorists, in violation of 18 U.S.C. § 2339A;

(Count 3) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (brought against Farooq and Ibrahim only); and (Count 4) conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k). ('15 Indictment at 12–72 ['15 ECF No. 1].) These charges form the basis of case number 3:15-cr-358 (the '15 case).

The Government accuses Defendants of conspiring to provide, and actually providing, funds and other material support to al-Awlaki for the preparation and execution of terrorist attacks and killings. (*See* '15 Indictment at 12, 68.) The Government contends that Defendants conspired to obstruct its investigation into their illicit fundraising by making false statements to the FBI and destroying or concealing records. (*Id.* at 65–67, 71–72.) And as to Farooq and Ibrahim, the Government additionally alleges that they conspired to raise money for al-Awlaki through various fraudulent credit card and PayPal transactions. (*Id.* at 68–71.)

While in the Lucas County Corrections Center awaiting trial in the '15 case, Farooq allegedly attempted to hire a hitman to murder United States District Judge Jack Zouhary, the district judge presiding in the '15 case at the time. ('16 Indictment at 1 ['16 ECF No. 1].) Sometime in March 2016, Farooq allegedly told another inmate ("Individual A") that he wanted to hire someone to kill Judge Zouhary. (*Id.* ¶ 4.) Individual A promptly relayed this alleged statement to the FBI and agreed to record future conversations with Farooq regarding the alleged murder-for-hire plot. (*See* Mot. at 4–6 ['15 ECF No. 225; '16 ECF No. 41].)

On April 8, Farooq again allegedly mentioned his desire to have Judge Zouhary killed. ('16 Indictment ¶ 5.) In response, Individual A introduced Farooq to an FBI undercover employee ("UCE") posing as a hitman willing to kill Judge Zouhary for $15,000, a sum that included a $1,000 down payment. (*Id.* ¶ 6.) Farooq purportedly called the UCE and, using the code that Farooq and Individual A had developed to disguise Farooq's communications,

2

requested that the UCE murder the Judge. (*Id.* ¶¶ 7–8.) Farooq, the Government contends, arranged for his wife to meet with the UCE and make the $1,000 down payment. (*See id.* ¶¶ 9–14.) And Farooq also began arranging for his wife to pay the UCE the remaining balance. (*See id.* ¶ 15.) Farooq's wife allegedly met with the UCE twice. At the first meeting, Farooq's wife purportedly delivered the down payment. (*Id.* ¶ 13.) At the second meeting, the UCE showed Farooq's wife a photo of a body. (*Id.* ¶ 18.) The UCE represented that the dead man in the photo was Judge Zouhary. (*Id.*) The UCE also inquired about the rest of his payment. (*Id.*) Farooq's wife reviewed the photo and indicated that she would consult with her husband about the payment. (*See id.*)

Following an investigation into Farooq's alleged attempt to have Judge Zouhary killed, Farooq was charged on July 6, 2016, with (Count 1) attempted first degree murder of a federal officer or employee, in violation of 18 U.S.C. § 1114(3); (Count 2) solicitation to commit a crime of violence, in violation of 18 U.S.C. § 373(a); and (Count 3) the use of interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a). ('16 Indictment at 5–7.) These charges form the basis of case number 3:16-cr-222 (the '16 case).

## II.

In the present Motion, Farooq asks the Court to grant use immunity to Individual A, a potential defense witness. (Mot. at 1 ['15 ECF No. 225; '16 ECF No. 41].) If the Court decides not to grant Individual A use immunity, Farooq requests, alternatively, that the Court give a missing witness instruction at trial. (*Id.* at 1, 11.)

**A.     Judicially Compelled Witness Immunity**

Farooq contends that Individual A's testimony is crucial for his defense of the '16 case. (*See* Mot. at 1–2.) Because of his central role in helping the Government investigate the alleged

3

murder-for-hire scheme, Individual A could provide testimony that would support Farooq's entrapment defense. (*See id.*) Farooq served a subpoena directing Individual A to appear as a witness at trial. (*Id.* at 2.) Individual A, however, has indicated through counsel that he intends to invoke his Fifth Amendment right against self-incrimination. (*Id.*) Based on Individual A's representation that he will invoke the Fifth Amendment to avoid testifying, and also based on Individual A's history of dishonesty, incentive to ingratiate himself with the FBI, far-fetched allegations regarding additional plots ostensibly concocted by Farooq, and repeated efforts to contact Farooq's attorney, Farooq speculates that Individual A likely lied to the Government about Farooq's role in developing the alleged murder-for-hire plot. (*See id.* at 2–8.)

A district court "is without authority [under the federal use immunity statute] to either grant immunity to a witness who asserts his Fifth Amendment privilege against self incrimination, or to force the government to do so." *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999); *see Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983) ("No court has authority to immunize a witness."). Under 18 U.S.C. § 6003, the responsibility of determining when and to whom to grant immunity "is peculiarly an executive one, and only the Attorney General or a designated officer of the Department of Justice has authority to [make that determination]." *Pillsbury Co.*, 459 U.S. at 261 (citing 18 U.S.C. §§ 6002, 6003). A prosecutor may request immunity when "in his judgment" it is "necessary to the public interest." 18 U.S.C. § 6003. Nothing in the statute mandates that the Government grant immunity to a defense witness. *See id.*; *United States v. Mohney*, 949 F.2d 1397, 1401 (6th Cir. 1991).

The Sixth Circuit has discussed, but not explicitly accepted, two limited circumstances in which a district court might be warranted in granting immunity as an exercise of the court's inherent power: (i) where a witness possesses exculpatory testimony that is essential to an

4

effective defense and that strongly outweighs the Government's interests in declining to offer immunity and (ii) where the prosecutor has engaged in misconduct. *See United States v. Emuegbunam*, 268 F.3d 377, 401 & n.5 (6th Cir. 2001); *Talley*, 164 F.3d at 997–98.

Aside from one narrow situation, the Sixth Circuit has rejected the effective defense exception. *See Emuegbunam*, 268 F.3d at 401 & n.5; *Talley*, 164 F.3d at 997–98. As the Sixth Circuit has explained, judicially compelled use immunity would "raise separation of powers concerns, because the decision of whom to prosecute is soundly within the discretion of the prosecutor, not the courts," and would "force courts to place the government in the undesirable position of choosing whether to prosecute the defendant or the witness." *Talley*, 164 F.3d at 997 (citing *Mohney*, 949 F.2d at 1401). A court might have authority to grant immunity under the effective defense exception in one situation—where the Government, by selectively granting immunity to its own witnesses while denying immunity to the defendant's witnesses, would deprive the defendant of a fair trial. *See Emuegbunam*, 268 F.3d at 401 & n.5; *Talley*, 164 F.3d at 997–98. "Selective grants of immunity could violate due process where they produce 'egregiously lopsided access to evidence.'" *Mohney*, 949 F.2d at 1402 (quoting *United States v. Hooks*, 848 F.2d 785, 802–03 (7th Cir. 1988)). The Sixth Circuit has cautioned, however, that a defendant "does not have a right to have his witnesses immunized simply because the prosecution relies on immunized witnesses to make its case." *Id.*

The second potential exception applies where "the prosecution abuses its discretion by intentionally attempting to distort the fact-finding process." *Mohney*, 949 F.2d at 1402. But as with the first exception, immunity under this theory "should not be granted lightly." *Id.* "The defendant must show 'that the [G]overnment's decisions were made with the deliberate intention of distorting the judicial fact finding process.'" *Id.* (quoting *United States v. Herman*, 589 F.2d

1191, 1204 (3d Cir. 1978)) (internal quotation marks omitted).

Here, Farooq recognizes that the Court has limited authority (if any) under binding Sixth Circuit precedent to grant immunity or to force the Government to grant immunity. (*See* Mot. at 9.) But he argues, nonetheless, that the Court should disregard this precedent and apply an approach to judicially compelled immunity adopted by the Third Circuit. (*See id.* at 9–11.) Under the Third Circuit's approach, a defendant can prove a due process violation on the basis of the Government's refusal to immunize a defense witness by showing that (1) immunity is sought in the district court, (2) the defense witness is available to testify, (3) the proffered testimony is clearly exculpatory, (4) the proffered testimony is essential to the defense, and (5) there are no strong governmental interests which countervail against a grant of immunity. *United States v. Quinn*, 728 F.3d 243, 261–62 (3d Cir. 2013).

The Court declines Farooq's request that it disregard binding precedent. *See Fernanders v. Daughtrey*, No. 16-10262, 2016 WL 1259117, at *3 (E.D. Mich. Mar. 31, 2016) ("[T]he Sixth Circuit is a *superior court*, whose decisions establish the legal precedent that this Court must apply."); *Carroll v. Ives*, No. 12-34, 2013 WL 791858, at *2 (E.D. Ky. Mar. 4, 2013) ("This Court lacks authority to ignore or overturn Sixth Circuit precedent . . . ."). The Court notes, moreover, that even if it were to apply the Third Circuit's test for determining whether the Government has committed a due process violation by refusing to immunize a defense witness, Farooq would not be able to satisfy that test. Farooq has not offered proof that Individual A would offer exculpatory testimony, let alone clearly exculpatory testimony. *See Quinn*, 728 F.3d at 263. And according to the Government, it has a strong interest which countervails against a grant of immunity for Individual A: the Government's interest in prosecuting Individual A if he lied to the FBI about the alleged murder-for-hire plot. (Resp. at 6–7 ['16 ECF No. 48].) As the

Government explains, prosecuting untruthful informants helps to assure that future informants provide accurate information. (*Id.*)

Neither of the limited circumstances discussed by the Sixth Circuit in which a district court might grant use immunity applies here either. Regarding the first potential exception, Farooq will not be denied a fair trial based on the Government's decision to immunize some of its witnesses while withholding immunity for Individual A. The Government has represented that it granted immunity to two witnesses regarding the alleged murder-for-hire plot: Farooq's sister-in-law and Farooq's brother-in-law. (Resp. at 4.) The Government does not anticipate, though, that the in-laws' testimony will be relevant to Farooq's culpability or to his conversations with Individual A. (*Id.*) Individual A's testimony would, therefore, be unable to refute the testimony expected from Farooq's in-laws. Moreover, although Farooq infers, based on the circumstances described earlier, that Individual A would provide exculpatory testimony, (*see* Mot. at 2–8), it is far from clear that Individual A's testimony would comport with Farooq's expectations. As Farooq acknowledges, Individual A has a history of dishonesty and manipulation. (*See id.* at 2.) Thus, even if Farooq had more direct proof of the content of Individual A's potential testimony, Individual A might alter his expected testimony on the stand. And as to the second potential exception, Farooq has not presented any evidence to suggest that the Government's witness immunity decisions in this case were made with the deliberate intention of distorting the judicial fact finding process.

Because neither of the limited circumstances discussed by the Sixth Circuit applies, the Court denies Farooq's request that it grant use immunity to Individual A.

**B.     Missing Witness Instruction**

Farooq's alternative request also falls flat. Farooq requests that the Court give a missing

7

witness instruction at trial. (Mot. at 1, 11.) The instruction would inform the jury that "the informant is within the [G]overnment's exclusive power to produce, that he would have given material testimony on issues in the case, and [that] the [G]overnment's failure to call him may give rise to an inference that this testimony would be harmful to the [G]overnment." (*Id.* at 11.)

A court may instruct the jury that it can draw an adverse inference from a party's failure to call a witness if (1) the witness is peculiarly within the party's power to produce and (2) the testimony of the witness would elucidate the transaction at issue. *United States v. Russell*, No. 96-2128, 142 F.3d 438 (Table), 1998 WL 136574, at *4 (6th Cir. Mar. 19, 1998); *United States v. Frost*, 914 F.2d 756, 765–66 (6th Cir. 1990). A court's determination of whether a witness is peculiarly within a party's power to produce takes into account both practical and physical considerations. *See United States v. Blakemore*, 489 F.2d 193, 195 (6th Cir. 1973).

Neither this Court nor the Sixth Circuit has addressed the exact situation presented here—where the defendant contends that a missing witness instruction is warranted based on the Government's refusal to grant use immunity to a potential defense witness after the witness has indicated that he will invoke his Fifth Amendment right against self-incrimination. The Sixth Circuit has, however, concluded that a witness's invocation of his Fifth Amendment right renders him "practically unavailable[] to both sides" and that this practical unavailability means that the witness's non-testimony would not elucidate the transaction. *Russell*, 142 F.3d 438 (Table), 1998 WL 136574, at *5.

Other courts that have more directly addressed this situation have, similarly, held that a witness's invocation of the Fifth Amendment followed by the Government's refusal to grant the witness use immunity does not warrant a missing witness instruction. *See, e.g.*, *United States v. Rios*, 636 F.3d 168, 171 (5th Cir. 2011) ("Every circuit that has considered the question . . . has

held that the government's ability to grant immunity does not make a witness who invokes the Fifth Amendment right not to testify peculiarly available to the government."); *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597 (1st Cir. 1989) ("The question presented here is whether the government's power to grant immunity from prosecution makes Laganas more available—peculiarly available—to the government. We hold that it does not."); *United States v. Flomenhoft*, 714 F.2d 708, 714 (7th Cir. 1983) ("Requiring a missing witness instruction each time the prosecution decides not to immunize a witness would constitute a substantial judicial encroachment upon prosecutorial discretion. . . . The district court properly refused Flomenhoft's missing witness instruction.").

A missing witness instruction is not appropriate here. Individual A assisted the Government in developing its '16 case against Farooq. But the fact that Individual A served as an informant for the Government does not automatically establish that he is peculiarly within the Government's power to produce at trial. There is no evidence to suggest that the Government has attempted to prevent or discouraged Individual A from testifying. As Farooq acknowledges, Individual A is asserting his Fifth Amendment right based on the advice of counsel. (Def.'s Resp. to Gov't Notice at 6 ['16 ECF No. 32].) That the Government could immunize Individual A but has chosen not to does not automatically establish that Individual A is peculiarly within the Government's power to produce either. On this matter, the Court concurs with the Seventh Circuit's determination that a rule requiring the use of a missing witness instruction each time the Government decides not to immunize a witness "would constitute a substantial judicial encroachment upon prosecutorial discretion." *Flomenhoft*, 714 F.2d at 714. Allowing the jury to draw an adverse inference in every instance where the Government decides not to immunize a witness would, moreover, conflict with Sixth Circuit precedent in which that court has

emphasized the prosecution's considerable discretion in granting immunity while highlighting the district court's lack of authority to force the Government's hand in such decisions. *See, e.g., Talley*, 164 F.3d at 997; *Mohney*, 949 F.2d at 1401–03. Given the facts of this case, where there is neither evidence of prosecutorial misconduct nor evidence that the Government encouraged or pressured Individual A not to testify on Farooq's behalf, the Court concludes that Individual A is not peculiarly within the Government's power to produce. Consequently, Farooq's request for a missing witness instruction is denied.

The Court concludes with several observations. While no evidence has been yet presented, the briefing of the parties in this case indicates that Individual A is claimed to have put an undercover agent in touch with Farooq. Assuming Individual A invokes his Fifth Amendment privilege and does not testify, this Opinion is not intended to limit otherwise admissible evidence that may be relevant to the role, conduct, or other matters pertaining to Individual A. Specifically, Federal Rule of Evidence 806 may allow for Individual A's credibility to be attacked, and then supported, by any evidence that would be admissible for those purposes if he had testified as a witness. In some respects, it may be that the Government bears the practical burden of explaining to the jury why Individual A is absent. The Court is not convinced though that such absence impairs the right to a fair trial.

### III.

Farooq's Motion for Defense Witness Immunity or, in the Alternative, for a Missing Witness Instruction ['15 ECF No. 225; '16 ECF No. 41] is, for these reasons, **DENIED**.

**IT IS SO ORDERED.**

6-8-2017
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE